137 P.3d 120 (2006)
133 Wash.App. 602
SPOKANE RESEARCH & DEFENSE FUND, a non-profit corporation, Appellant,
v.
WEST CENTRAL COMMUNITY DEVELOPMENT ASSOCIATION, a public corporation; and, City of Spokane, a Washington first class charter city, Respondents.
No. 24382-6-III.
Court of Appeals of Washington, Division 3.
June 22, 2006.
Stephen K. Eugster, Eugster Law Office PSC, Spokane, for Appellant.
Milton G. Rowland, Brian T. McGinn, Winston & Cashatt, Spokane, for Respondents.
BROWN, J.
¶ 1 Spokane Research & Defense Fund (SRDF) sued a private non-profit corporation, the West Central Community Development Association (Association), and the City of Spokane (City), for allegedly violating the Washington Public Disclosure Act (PDA). *121 The trial court summarily dismissed the complaint, ruling the Association was not the functional equivalent of a government agency under Telford v. Thurston County Board of Commissioners, 95 Wash.App. 149, 974 P.2d 886 (1999). SRDF appeals the ruling and requests attorney fees. Because the Association does not come within the PDA definition of a public agency, and our Telford balancing reaches the same result as the trial court, we affirm and deny attorney fees.

FACTS
¶ 2 In 1979, mainly to acquire federal block grants, the City approved the construction of the Association's west central community center. An advisory committee recommended the center operation by a neighborhood-based nonprofit corporation. Consistently, the City temporarily hired Donald S. Higgins as center manager until the Association was formally incorporated under Internal Revenue Code 503(c)(3) in 1980. Mr. Higgins has since served as the Association's executive director at the pleasure of a private board of directors, not connected to the City.
¶ 3 The center was constructed on a City park and leased to the Association for $1.00 per year. The Association provides community programs and services, including the Women, Infant, and Children Nutrition Program; Head Start; Deaconess Women's Clinic; Learning Skills Center; and before and after school programs. The City has no involvement in the day-to-day operations of the Association, but does occasionally contract with the Association for community services. Most contracts contain an independent contractor clause stating the Association is an independent contractor and "not the agent or employee of the City." Clerk's Papers (CP) at 263, 271, 277.
¶ 4 In 2003, Kathy Reid and SRDF unsuccessfully sought records from the Association and the City. SRDF then sued the Association and the City, alleging a PDA violation because the Association was the functional equivalent of a government agency subject to the PDA under Telford.
¶ 5 The parties filed cross-motions for summary judgment. Applying the Telford four-factor balancing test, the court held the Association was not the functional equivalent of a government agency, and summarily dismissed SRDF's complaint. SRDF appealed.

ANALYSIS

Public Disclosure Act Applicability
¶ 6 The issue is whether the trial court erred in granting the Association's request for summary dismissal and concluding the PDA did not apply under the facts.
¶ 7 We review a summary judgment de novo, examining the record for any genuine material fact dispute. Lybbert v. Grant County, 141 Wash.2d 29, 34, 1 P.3d 1124 (2000). We engage in the same inquiry as the trial court, accepting the facts and all reasonable inferences from those facts in the light most favorable to the nonmoving party. Williamson, Inc. v. Calibre Homes, Inc., 147 Wash.2d 394, 398, 54 P.3d 1186 (2002). We engage in the same inquiry as the trial court, accepting the facts and all reasonable inferences from those facts in the light most favorable to the nonmoving party. Williamson, Inc. v. Calibre Homes, Inc., 147 Wash.2d 394, 398, 54 P.3d 1186 (2002).
¶ 8 SRDF first contends since the Association is located on a City park, it is part of the City's park department, a public agency. SRDF provides no reference to the record and no legal authority supporting its argument. See RAP 10.3(a)(5); see also State v. Johnston, 100 Wash.App. 126, 134, 996 P.2d 629 (2000) (issue is waived when party fails to provide legal support). SRDF does not provide reasoned argument connecting the Spokane Parks and Recreation Department and the Association. We disregard unsupported argumentative assertions and conclusory statements in a summary judgment proceeding. Sanders v. Woods, 121 Wash.App. 593, 601, 89 P.3d 312 (2004). Moreover, a tenant located in a publicly owned structure on public land does not automatically become a public agency. Tenants located on municipally owned industrial parks, even when occupying publicly owned structures do not become public agencies. Therefore, we decline to analyze this contention further.
*122 ¶ 9 Next, based on Telford, SRDF contends the Association is the functional equivalent of a public agency and subject to the PDA. The PDA's purpose is to require a state "agency" to make available for public inspection and copying all public records, unless the record falls within the enumerated exceptions. RCW 42.17.260(1). "The PDA `is a strongly worded mandate for broad disclosure of public records.'" Spokane Research & Def. Fund v. City of Spokane, 155 Wash.2d 89, 100, 117 P.3d 1117 (2005) (quoting Hearst Corp. v. Hoppe, 90 Wash.2d 123, 127, 580 P.2d 246 (1978)). The PDA is interpreted broadly, requiring agencies to give "the fullest assistance to inquirers and the most timely possible action on requests for information." RCW 42.17.290.
¶ 10 The statutory meaning of "agency" depends on the context in which it is used, not merely the entity's label. See Graham v. State Bar Ass'n, 86 Wash.2d 624, 626, 548 P.2d 310 (1976) (whether bar association is "agency" within meaning of auditing statutes depends on context and reference in State Bar Act, chapter 2.48 RCW). In Telford, Division Two of this court analyzed whether two agencies, the Washington State Association of Counties (WSAC) and the Washington State Association of County Officials (WACO) were subject to the PDA. Because the Telford court reasoned the statutory definition involved was ambiguous, the court adopted the functional equivalent test before deciding the two associations were public agencies subject to the PDA. Telford, 95 Wash.App. at 166, 974 P.2d 886.
¶ 11 The Association and the City argue Telford applies solely to the PDA public funding section, not the public documents section. But the Telford court relied on persuasive case law in both situations. Telford, 95 Wash.App. at 161-63, 974 P.2d 886; see, e.g., Public Citizen Health Research Group v. Dep't of Health, Educ. and Welfare, 215 U.S.App. D.C. 191, 668 F.2d 537, 543-44 (1981) (functional equivalent test used in Freedom of Information Act (FOIA) context); Bd. of Trustees v. Freedom of Info. Comm'n, 181 Conn. 544, 436 A.2d 266, 270 (1980) (Connecticut Supreme Court adopted federal four-factor test for agency document disclosure requests); Marks v. McKenzie High Sch. Fact-Finding Team, 319 Or. 451, 878 P.2d 417, 424-25 (1994) (Oregon Supreme Court adopted six-part functional equivalent test for public inspection request). We conclude the functional equivalent test is applicable in both contexts.
¶ 12 In Telford, WSAC and WACO were treated as ambiguous "other local public agen[cies]" because they did not fall within other RCW 42.17.020(1) definitions. Telford, 95 Wash.App. at 158, 974 P.2d 886. Both entities were created by legislative directive to fulfill specified public duties, were completely controlled by public and appointed officials, and were incorporated into a public nonprofit corporation form. Id. at 152-55, 974 P.2d 886. WSAC's incorporation articles provide its purpose is to coordinate county administrative programs to improve "county administrative government" under chapter 36.32 RCW. Id. at 153-54, 974 P.2d 886. WACO's stated nonprofit "public purpose" was to carry out the mandates of chapter 36.47 RCW. Id. at 155, 974 P.2d 886. WACO's finances are statutorily subject to public audit, while WSAC's finances are not publicly audited. Id. Since 1977, WSAC and WACO employees are not considered government employees for retirement purposes, although some employees belong to a pre-existing State retirement program. Id. at 156, 974 P.2d 886.
¶ 13 Here, unlike the Telford court, we are not confronted with an ambiguous statutory definition. None of the RCW 42.17.020(1) "state agency" definitions fit our facts and do not implicate the "other local public agency" definition, argumentative assertions and conclusory statements aside. Said differently, the facts as summarized below create no ambiguity as to the Association's non-governmental status. The facts do not raise the PDA law. Therefore, we need not apply Telford's functional equivalent analysis.
¶ 14 The Association is incorporated as a conventional Internal Revenue Code 503(c)(3) charity. The Association does not fall within the City's park department as asserted. The City aptly argues "private vendors at Riverfront Park are not `agencies' just because they sell burritos at the park." *123 City's Resp. Br. at 11. Unlike the Telford entities, the Association was not created to fulfill a legislative mandate. The Association does not make policy or legislate. The Association does not execute law or regulate law. The Association does not adjudicate disputes. The Association is not controlled by elected or appointed county officials, is not government audited, and its employees are not paid by a government or enjoy government health or retirement benefits. In short, the Association possesses no material governmental attributes or characteristics. The Association simply rents space from the City, administers public and private grants, subleases space for its own benefit, and operates apart from government control.
¶ 15 Applying Telford solely for argument the result is the same. We review four factors in determining if an entity is the functional equivalent of a public agency: (1) the entity's function, (2) the amount of government funding, (3) the amount of government control, and (4) the entity's origin. Washington favors balancing on a case to case basis. Telford, 95 Wash.App. at 161-62, 974 P.2d 886.
¶ 16 Function. The Association functions to provide community services to benefit low to moderate income residents. While the government often provides social programs, serving public interests is not the exclusive domain of the government. Unlike in Telford, the Association's function is one that may be "delegated to the private sector." Telford, 95 Wash.App. at 164, 974 P.2d 886.
¶ 17 Government Funding. The Association receives funding from various public and private sources. About 25 percent is private funding. The Association subleases space, using the income for operational purposes. The nominal lease payment to the City is merely part of the contract consideration. The Association administers programs as an independent contractor, relieving the City of dealing with potential faith based programs barred to the City under separation of church and state principles. Governmental grant receipt does not mandate FOIA application. Kubick v. Child & Family Serv., 171 Mich.App. 304, 429 N.W.2d 881, 883 (1988). The Telford court noted a totally different funding stream, dues and assessments, for WSAC and WACO. Telford, 95 Wash.App. at 164, 974 P.2d 886. In sum, the Association's funding does not weigh for application of the PDA.
¶ 18 Government Control. No outside government control of the Association is visible here. The City is not involved in the day-to-day Association operations. Further, when the City contracts with the Association, it typically includes an independent contractor clause, stating the Association is an independent contractor and "not the agent or employee of the City." CP at 263, 271, 277.
¶ 19 Origin. Former Spokane Municipal Code (SMC) 03.01.520(A) (repealed June 3, 2005) set in motion the events leading to the Association's creation. The City built and owns the Association's building. Initially, Mr. Higgins became a temporary City employee for less than one year. Consistent with advisory committee recommendations, Mr. Higgins then independently operated the Association for more than 20 years as executive director under the control of an independent board. Our focus is solely on the Association, not the differently organized community centers referred to in the former code provision. While the City was initially involved in developing the community center, it was clearly the City's intent from the onset for the Association to administer the community center's programs independently, operating apart from the City despite the conflicting language of former SMC 03.01.520(A), referring to City operation. After transition, operation is independent.
¶ 20 In sum, even construing the PDA liberally in favor of the fullest possible public records access, our balancing is decidedly against concluding the Association is a functional equivalent of a public agency. Therefore, the trial court did not err in granting summary judgment dismissal of SRDF's public disclosure complaint and denying attorney fees under RCW 42.17.340(4). Similarly, SRDF is denied attorney fees here.
¶ 21 Affirmed.
WE CONCUR: SWEENEY, C.J., and KULIK, J.