[No. 25222-1-III.   Division Three.   April 24, 2008.]

LEONORA CLAIRE CLARKE, *Appellant,* v. TRI-CITIES ANIMAL CARE & CONTROL SHELTER, *Respondent.*

*Adam P. Karp* (of *Animal Law Offices*), for appellant.

*Ronald F. St. Hilaire* (of *Liebler, Connor, Berry & St. Hilaire, PS*), for respondent.

¶1 STEPHENS, J.[*] — Tri-Cities Animal Care & Control Shelter (TCAC) is a privately-run corporation that contracts with the Animal Control Authority (ACA) of Richland, Pasco, and Kennewick (tri-cities) to provide animal control services for the tri-cities area. In 2005, Leonora Clarke made a request for euthanasia logs from TCAC under former RCW 42.17.250-.348 (2004), the public disclosure act (PDA).[1] TCAC refused to give Ms. Clarke the records, claiming it was not a public agency subject to the PDA. Ms. Clarke requested the records from ACA, but ACA claimed it did not have the records she sought. Ms. Clarke then filed a lawsuit against TCAC and ACA.[2] Her motion to show cause was denied because the court concluded TCAC was not a public agency. Ms. Clarke appeals.

¶2 We reverse and hold the TCAC is an agency subject to the PDA. We deny Ms. Clarke's request for attorney fees as premature and remand for further proceedings consistent with this opinion.

## FACTS

¶3 In 1998, the cities of Pasco, Kennewick, and Richland formed the ACA through an interlocal cooperative agreement.

---

[*] Justice Debra L. Stephens was a member of the Court of Appeals at the time oral argument was heard on this matter. She is now serving as a judge pro tempore of the court pursuant to RCW 2.06.150.

[1] In this opinion we cite to the 2004 version of the PDA because that is the version that was in effect when Ms. Clarke filed her claim in 2005. Provisions of the PDA were subsequently recodified in the public records act, ch. 42.56 RCW, effective July 1, 2006.

[2] For the purposes of appeal, however, the parties agreed to dismiss ACA from this lawsuit.

¶4 In 1999, Bruce and Sandy Young formed a Washington nonprofit corporation under the name "Tri-Cities Animal Shelter." The purpose of this entity was in part to shelter animals in need for the public good. It also sought to promote spaying and neutering programs and to educate the public in hopes of ending the need for euthanasia. It planned to actively participate in the prevention of cruelty toward animals.

¶5 In 2000, the Youngs formed a for-profit corporation under the name TCAC. TCAC's purpose as stated in its articles of incorporation was to engage in the business of providing animal control and sheltering services for animals in Benton and Franklin Counties.

¶6 In 2004, ACA executed a personal services agreement with TCAC for TCAC to provide animal control services to the tri-cities area. The separate, nonprofit corporation formed by the Youngs was not a party to this agreement. TCAC has numerous duties under the personal services agreement, including apprehension and impound of stray dogs and cats; impound of distressed animals; removal of dead animals from roads; disposal of dead animals; elimination of wild or vicious animals; animal regulation enforcement, including citation authority for violation of animal regulatory ordinances; animal sheltering; acceptance and care of animals; reunification; adoption; disposal of unclaimed animals; and euthanasia. Under the terms of the agreement, TCAC and its employees are not permitted to issue citations for misdemeanor or gross misdemeanor violations. With respect to euthanasia, the agreement states TCAC is required to "[a]rrange and/or provide for the humane euthanasia and disposal of unwanted animals." Clerk's Papers at 553.

¶7 Mr. Young and others employed by TCAC took oaths of office as animal control officers for Pasco, Kennewick, and Richland. The agreement further specifies that TCAC will provide at least one enforcement officer with three years of experience in animal control enforcement. The officer must

be trained in the issuance of criminal complaints and citations.

¶8 The agreement also sets out a line item compensation schedule. The annual amounts are to be paid monthly to TCAC. TCAC operates in a city-leased building and pays no rent. TCAC is not permitted to conduct private business at this facility. Under the agreement, TCAC is also required to keep records and provide monthly reports to ACA. TCAC is not subject to annual audits by the State.

¶9 Ms. Clarke believed TCAC was violating euthanasia protocol. On August 3, 2005, she made a records request under the PDA, asking for all euthanasia logbooks maintained by TCAC. On August 4, TCAC responded it was not a public agency, rejected Ms. Clarke's request, and directed her to ACA.

¶10 On August 11, counsel for Ms. Clarke forwarded her records request to the Kennewick city attorney. The city responded that it did not possess the records she sought so would provide only summary statistics in its possession.[3]

¶11 Ms. Clarke then filed this lawsuit against TCAC and ACA. Ms. Clarke filed a motion for two show cause hearings, one concerning TCAC and one concerning ACA. The court held TCAC was not a "public agency" as defined by the PDA. It further found it did not engage in the type of public activity present in *Telford v. Thurston County Board of Commissioners,* 95 Wn. App. 149, 974 P.2d 886, *review denied,* 138 Wn.2d 1015 (1999). It found the log books requested were not prepared or retained by ACA. The court denied Ms. Clarke's motions to show cause and dismissed her PDA action against TCAC and ACA. The court also denied her motion for reconsideration.

---

[3] Although ACA is no longer a party to this lawsuit, it should be noted that under the PDA, ACA would be required to produce the records that Ms. Clarke sought regardless of whether it had possession of them, so long as it *used* the records in question. Former RCW 42.17.020(41) (2005). It is not clear from the record whether ACA used the records in question preparing its summary statistics of TCAC's activity.

## ANALYSIS

¶12  We first address the question of whether TCAC is a "public agency" as defined by the PDA, former RCW 42.17.250-.348 (2004), and thus obligated to follow the requirements of the PDA. The trial court found that TCAC is not a public agency under the PDA. Because statutory interpretation is a question of law, we review the trial court's legal conclusion de novo. *Am. Legion Post No. 32 v. City of Walla Walla,* 116 Wn.2d 1, 5, 802 P.2d 784 (1991).

¶13  The PDA requires a state or local "agency" to make available for public inspection and copying all public records, unless the record falls within a statutory exception. *Spokane Research & Def. Fund v. W. Cent. Cmty. Dev. Ass'n,* 133 Wn. App. 602, 606, 137 P.3d 120 (2006) (citing former RCW 42.17.260(1) (2005)), *review denied,* 160 Wn.2d 1006 (2007). "The PDA is interpreted broadly, requiring agencies to give 'the fullest assistance to inquirers and the most timely possible action on requests for information.' " *Id.* (quoting former RCW 42.17.290 (1995)).

¶14  Former RCW 42.17.020(2) (2005) defines "agency" as follows:

> "Agency" includes all state agencies and all local agencies. "State agency" includes every state office, department, division, bureau, board, commission, or other state agency. "Local agency" includes every county, city, town, municipal corporation, quasi-municipal corporation, or special purpose district, or any office, department, division, bureau, board, commission, or agency thereof, or other local public agency.

To be considered an "agency," TCAC must qualify as an "other local public agency." This term is not defined in the PDA. *Telford,* 95 Wn. App. at 158.

¶15  In *Telford,* Division Two of this court was asked to determine if two organizations—the "Washington State Association of Counties" and the "Washington State Association of County Officials"—were public entities. *Id.* at

152-56. The court in *Telford* adopted a four-factor "functional equivalent" balancing test to determine if an entity is to be regarded as a public agency for purposes of the PDA: (1) whether the entity performs a governmental function, (2) the level of government funding, (3) the extent of government involvement or regulation, and (4) whether the entity was created by the government. *Id.* at 162. Under *Telford,* each of these criteria need not be equally satisfied, but rather the criteria on balance should suggest that the entity in question is the functional equivalent of a state or local agency. *Id.*

¶16 In *Spokane Research,* this division saw no need to apply *Telford*'s four-factor test because there was "no ambiguity as to the Association's nongovernmental status," and thus it was not subject to the PDA. *Spokane Research,* 133 Wn. App. at 608. But here, TCAC is not so obviously beyond the reach of the PDA.[4] Thus, we engage in a *Telford* analysis to determine whether TCAC is an "other local agency" subject to the PDA. Under *Telford,* we conclude that TCAC is the functional equivalent of a public agency.

¶17 Function. TCAC's purpose is to perform animal control services for the tri-cities area. Chapter 16.52 RCW governs animal control services. It recognizes the authority of cities and counties to pass local ordinances regulating the care and control of animals. Former RCW 16.52.011(2)(b) (1994).[5] In turn, the statute acknowledges that cities and counties may contract with animal care and control agen-

---

[4] TCAC argues that the legislature clearly intended to exclude private corporations from the definition of "other local public agency." As evidence of this proposition, TCAC contrasts the PDA's definition of "person," which does include private corporations, former RCW 42.17.020(35) (2005), with the definition of "agency," which does not include "person" or "private corporation." Former RCW 42.17.020(2). TCAC argues that since the legislature used the term "private corporation" in the definition of "person," it would have used the term in the definition of "agency" as well if it intended to include private corporations as agencies. This argument still does not explain what precisely constitutes an "other local public agency," which is essentially the question *Telford* sought to answer and which is the pertinent question here.

[5] As with the PDA, the citations concerning chapter 16.52 RCW will be to the law in effect at the time this request was made; the chapter has since been revised, resulting in recodification without substantive change to some of the relevant

cies to perform these duties. RCW 16.52.015(1). An entity becomes an animal care and control agency when it is "authorized to enforce city or county municipal ordinances regulating the care, control, licensing, or treatment of animals within the city or county," or when it contracts with the city or county as a humane society to provide those services. Former RCW 16.52.011(2)(b). In any event, an animal care and control agency "may enforce the provisions of [chapter 16.52 RCW] *only* if the county or city legislative authority has entered into a contract with the agency to enforce [those provisions]." RCW 16.52.015(1) (emphasis added).

¶18 TCAC is authorized by the local government to provide animal control services. Under former RCW 16.52.011(2)(b), it is therefore an animal care and control agency. Individuals associated with TCAC take oaths as animal control officers; animal control officers can be employed only by an animal care and control agency. *See* former RCW 16.52.011(2)(c) (1994). As part of the oath, the employees of TCAC agree to enforce the area's animal control regulations. As regulators, TCAC and its officers execute police powers in carrying out their duties, most notably impounding and destroying private citizens' pets. These types of acts implicate due process concerns. *See, e.g.,* RCW 16.52.085 (discussing situations in which an animal control officer does or does not need a warrant to remove an animal from private property). The implication of police powers is clear from the language of RCW 16.52.015(2), which requires animal control officers to comply with "the same constitutional and statutory restrictions concerning the execution of police powers imposed on law enforcement officers who enforce this chapter." Because a local government grants TCAC the ability to execute police powers pursuant to state statute, TCAC is performing a governmental function. *Cf. Champagne v. Spokane Humane Soc'y,* 47 Wn. App. 887, 891, 737 P.2d 1279, *review denied,* 108

provisions. *See generally* Laws of 2007, ch. 376, § 2 (renumbering the definitions in RCW 16.52.011).

Wn.2d 1035 (1987) (humane society acting as a public entity for the purpose of the public duty doctrine when city of Spokane contracted with it and delegated it the authority to enforce the animal regulations); *Brunette v. Humane Soc'y,* 294 F.3d 1205, 1208 (9th Cir. 2002) (noting that a humane society created by statute and holding police powers was a state actor for the purposes of 42 U.S.C. § 1983 litigation), *cert. denied,* 537 U.S. 1112 (2003).

¶19  But while TCAC is performing a governmental function, *Telford*'s analysis seems to hinge on whether the entity's duties can be delegated to the private sector. *Telford,* 95 Wn. App. at 165. Although the function here was assigned to the private sector, such delegation may occur only via a contractual relationship between the city and the animal control agency. RCW 16.52.015(1). Hence, the nature of the delegation merely allows TCAC to step into the shoes of the local government.[6] In short, while the local government can delegate the performance *authority* for this public function to a private entity, it cannot delegate away its statutory *responsibility* to perform within PDA legal requirements. TCAC's performance depends on its contract with the cities involved. RCW 16.52.015(1). Thus, TCAC is performing a governmental function that can never be wholly delegated to the private sector. Said another way, were we to conclude that TCAC is not a functional equivalent of a public agency, we would be setting a precedent that would allow governmental agencies to contravene the intent of the PDA and the public records act by contracting with private entities to perform core government functions. All told, this factor balances in favor of finding that TCAC is the functional equivalent of a public agency.

¶20  Government Funding. Nearly all of TCAC's operating budget comes from public money. TCAC occupies space in a building rent-free, subsidized by the local government with which it contracts, and it is forbidden by the terms of

---

[6] This was perhaps appropriately described at oral argument as "outsourcing" a governmental function.

that contract from engaging in any business on that premises other than its animal control services. Thus, this factor clearly weighs in favor of application of the PDA.

¶21 Government Control. TCAC is in control of its day-to-day operations and maintains its own insurance. Its employees are not considered public employees and receive no benefits from the local government. However, as noted above, there are some government restrictions on how the government facilities can be used. In addition, TCAC is permitted to provide euthanasia services only in a manner approved by ACA. TCAC is also required to keep records and submit monthly reports to ACA. Thus, there is a notable degree of governmental control here and this factor weighs in favor of finding that TCAC is the functional equivalent of a public agency.

¶22 Origin. TCAC was formed as a private corporation, by private citizens, and is not an entity created by the government. Although it could not perform its function without its relationship to the local government, this factor weighs against PDA application.

¶23 Balancing. Construing the PDA liberally in favor of the fullest possible public records access, we balance these aforementioned factors. On balance, we conclude TCAC is the functional equivalent of a public agency. While TCAC has some nonpublic functions and characteristics, the fact that it performs a governmental function dependent upon its relationship with the local government, receives the bulk of its funding from taxpayer money to perform that function, and is subject to regular government oversight all tip the scale in favor of finding that TCAC is the functional equivalent of a public agency. Therefore, the trial court erred as a matter of law in denying the motion to show cause.

¶24 Because we conclude that TCAC is subject to the PDA, we need not address the procedural questions raised by the parties but instead remand to the trial court for further proceedings consistent with this opinion.

¶25  Ms. Clarke has requested fees on appeal and at the trial level pursuant to former RCW 42.17.340(4) (1992) and RAP 18.1. Former RCW 42.17.340(4) provides for an award of attorney fees, costs, and sanctions to a party who prevails against an agency when enforcing the right to copy or inspect records. *Spokane Research & Def. Fund v. City of Spokane,* 155 Wn.2d 89, 100, 117 P.3d 1117 (2005). Because we have determined only that TCAC is subject to the PDA, Ms. Clarke is not yet the prevailing party in an action to enforce the right to copy or inspect records, and her request is denied as premature.

## CONCLUSION

¶26  Under the balancing test of *Telford,* TCAC is an agency subject to the PDA. We reverse the trial court's conclusion to the contrary, deny Ms. Clarke's attorney fees request as premature, and remand for further proceedings consistent with this opinion.

KULIK, A.C.J., and BROWN, J., concur.