

IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
DIVISION THREE

| | | |
|---|---|---|
| PALMER D. STRAND, | ) | |
| PATRICIA N. STRAND, | ) | No. 36233-7-III |
| | ) | |
| Appellants, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| COUNCIL 2-WASHINGTON STATE | ) | |
| COUNCIL OF COUNTY AND CITY | ) | UNPUBLISHED OPINION |
| EMPLOYEES, AFSCME, AFL-CIO, | ) | |
| | ) | |
| and | ) | |
| | ) | |
| LOCAL 1553-COUNCIL 2- | ) | |
| WASHINGTON STATE COUNCIL OF | ) | |
| COUNTY AND CITY EMPLOYEES, | ) | |
| AFSCME, AFL-CIO, | ) | |
| | ) | |
| Respondents. | ) | |

SIDDOWAY, J. — Patricia and Palmer Strand appeal the summary judgment

dismissal of their Public Records Act (PRA)[1] action against Council 2 of the Washington

---

[1] Chapter 42.56 RCW.

State Council of County and City Employees, AFSCME, AFL-CIO (the Union), and its Local 1553. They also appeal the trial court's award against them of the Union's and Local 1553's reasonable attorney fees and costs. We affirm the order dismissing the action and award the Union and Local 1553 their reasonable attorney fees and costs on appeal.

### FACTS AND PROCEDURAL BACKGROUND

Patricia and Palmer Strand have challenged the assessment work of the Spokane County Assessor (Assessor) over the years, ultimately successfully. *See Strand v. Horton*, No. 13-179, 2017 WL 5999273 (Wash. Bd. Tax. Appeals May 9, 2017).

Evidently because of that experience, they acquired an interest in the work of the Assessor's employees. In 2016 and 2017, they submitted public record requests to the Assessor's office and the Spokane County Board of County Commissioners, in response to which they received time sheets and some documentation of the terms of the employees' agreements.

Dissatisfied with the response of the agencies, the Strands submitted a public record request to the Union in February 2017. They requested

> [a]ll records of employment agreements for employees of the Spokane County Assessor's office from Jan/1/12 through the date the records are produced. An employment agreement would include:
>
> **No. 1** Labor contracts including — attachments, amendments, revisions, etc.
>
> **No. 2** Labor agreements

2

> **No. 3**  Job descriptions — the appraisers in the Assessor's office have the
> title, **Exceptional Hourly (NonExempt).**

Clerk's Papers (CP) at 12.  The Union never produced any documents to Ms.

Strand, believing it was not a government agency subject to the PRA.

Almost one year later, Ms. Strand submitted a second public records request to the

Union, this time asking for a copy of its "2016 501(c)(3) filing as a non-profit."  CP at

161.  The business manager for the Union responded to Ms. Strand, informing her that

the Union "is not subject to public document and records disclosure requests.  That said,

WSCCCE [Council 2] does not file this form."  *Id.* at 160.

A few days later, the Strands commenced a PRA action against the Union and

Local 1553.  The relief requested was for the superior court (1) to determine if the Union

was subject to the PRA, based on evidence *the Union* should be required to produce,

(2) to determine whether the Union had violated the PRA by failing to acknowledge their

request and produce the requested records, (3) to issue an order to show cause to the

Union, and (4) for other relief provided by the PRA.

Ed Stemler, the Union's general counsel, telephoned Ms. Strand 10 days later, to

explain that the Union is not subject to the PRA.  Among other things, Mr. Stemler would

later testify:

> I let her know that once I had to assign an attorney to begin working on the
> case there would be costs that we incur that they could end up having to
> pay.  I let her know that if a judge determined this lawsuit was frivolous,

> the court could make them pay our attorney's fees and costs for having to address a frivolous claim.

CP at 151. After talking to her at some length, Mr. Stemler says he "realized that nothing I could say was going to convince her so we ended the conversation." CP at 151-52.

In late March 2018, the Union and Local 1553 moved to dismiss the Strands' complaint, arguing that since neither was an "agency" or the functional equivalent of an agency, neither was subject to the PRA. Although they styled their motion as one to dismiss under CR 12(b)(6) and 12(c), they supported it with declarations from the Union's business manager, its staff representative in Spokane, its president, its counsel of record, and Mr. Stemler. Citing RCW 4.84.185, the Union and Local 1553 requested attorney fees and costs for having to defend against a frivolous lawsuit.

A few days after the Union filed its motion, the Strands filed a "Motion for Court Order to Defendant to Show Cause Why Public Records Requested Not Provided." CP at 125. The relief requested was for the court to order the Union and Local 1553 to produce the requested records.

At a hearing on both motions, Ms. Strand made the following arguments as to why the Union was the functional equivalent of a governmental agency:

- She argued that the Union had characterized itself as "formed to preserve the civil service system [which is] a government function. It's a really big government function." Report of Proceedings (RP) at 11.
- She argued that the Union's collective bargaining agreement (CBA) with the Assessor required the Union to approve, by supplemental agreement, any work week exceeding the 81.25 hours contemplated by the CBA.

4

▪ She argued that the records she requested were "uniquely public" because whether Spokane County's appraisers are violating the standard work week is an issue the public deserves to know about. RP at 11, 13.

▪ She argued that the Union's right to enforce the CBA is a government function.

*See* RP at 11-13.

At the conclusion of the parties' arguments, the trial court denied the Strands' motion and granted the Union's and Local 1553's. It later awarded the Union and Local 1553 $7,440 in attorney fees. A motion for reconsideration filed by the Strands was denied. The Strands appeal.

ANALYSIS

Standard of Review

Although the Union and Local 1553 characterized their motion as one to dismiss under CR 12(b)(6) and 12(c), they submitted declarations, which—as the trial court observed during the hearing—transformed their motion into one for summary judgment. *See* CR 12(b) and 12(c) (If matters outside the pleadings are presented to and not excluded by the court in connection with a motion under 12(b)(6) or 12(c), the motion shall be treated as one for summary judgment.).

The Strands characterized their motion as one for an order to show cause, but they were not seeking such an order;[2] they were seeking a decision on the merits. They relied

---

[2] An order to show cause is a preliminary order, based on a prima facie showing, which requires the responding party to appear and show cause why relief requested by the

for their motion on a memorandum that included evidence in the form of unauthenticated attachments. In substance, theirs was a cross motion for summary judgment.

We review an order of summary judgment de novo, performing the same inquiry as the trial court. *Jones v. Allstate Ins. Co.*, 146 Wn.2d 291, 300, 45 P.3d 1068 (2002). Summary judgment is proper when there is "no genuine issue as to any material fact" and "the moving party is entitled to a judgment as a matter of law." CR 56(c).

A moving defendant meets the initial burden of demonstrating no genuine issue of material fact by pointing out that there is an absence of evidence to support the plaintiff's case. If a moving defendant makes this initial showing, then the plaintiff must set forth specific facts demonstrating a genuine issue for trial. *Young v. Key Pharms., Inc.*, 112 Wn.2d 216, 225, 770 P.2d 182 (1989), *overruled in part on other grounds by* 130 Wn.2d 160, 922 P.2d 59 (1996). The complete failure of proof concerning an essential element, "'renders all other facts immaterial.'" *Id.* (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986)).

I.   ASSIGNMENT OF ERROR 1: TRIAL COURT ORDER ON THE CROSS MOTIONS FOR
     SUMMARY JUDGMENT

Under the PRA, "[e]ach agency, in accordance with published rules, shall make available for public inspection and copying all public records" unless the record falls within a statutory exemption. RCW 42.56.070. RCW 42.56.520(1) provides that

moving party should not be granted. It does not decide the merits.

responses to requests for public records "shall be made promptly" and identifies the type

of response required.

The PRA includes the following definition of "agency":

> "Agency" includes all state agencies and all local agencies. "State agency"
> includes every state office, department, division, bureau, board,
> commission, or other state agency. "Local agency" includes every county,
> city, town, municipal corporation, quasi-municipal corporation, or special
> purpose district, or any office, department, division, bureau, board,
> commission, or agency thereof, or other local public agency.

RCW 42.56.010(1).

The PRA has been interpreted to cover private entities when they act as the

functional equivalent of governmental agencies. *Telford v. Thurston County Bd. of

Comm'rs*, 95 Wn. App. 149, 162-63, 974 P.2d 886 (1999). In *Telford*, this court adopted

a four-factor test to determine whether a private or quasi-private entity is an "agency" for

purposes of the PRA. Following *Telford*, the Attorney General's Office, exercising its

statutory authority under former RCW 42.17.348 (2005)[3] to adopt model rules for the

PRA, adopted WAC 44-14-01001. Tracking *Telford*'s four-factor test, the regulation

provides in part:

> An entity which is not an "agency" can still be subject to the act
> when it is the functional equivalent of an agency. Courts have applied a
> four-factor, case-by-case test. The factors are:
> (1) Whether the entity performs a government function;

---

[3] *Recodified as* RCW 42.56.570 pursuant to LAWS OF 2005, ch. 274, § 103,
effective July 1, 2006.

(2) The level of government funding;

(3) The extent of government involvement or regulation; and

(4) Whether the entity was created by the government.

WSR 05-23-166, § 44-14-01001, filed Nov. 23, 2005 (proposed rules); WSR 06-04-079, § 44-14-01001, filed Jan. 31, 2006 (final rules).

The Washington Supreme Court applied the *Telford* test in *Fortgang v. Woodland Park Zoo*, 187 Wn.2d 509, 517-19, 387 P.3d 690 (2017).[4]  It stated that "[c]ourts applying the test consider whether 'the criteria on balance . . . suggest that the entity in question is the functional equivalent of a state or local agency." *Id.* at 518 (second alteration in original) (quoting *Clarke v. Tri-Cities Animal Care & Control Shelter*, 144 Wn. App. 185, 192, 181 P.3d 881 (2008)).  Ultimately, "the purpose of the *Telford* test is to identify private entities that have effectively assumed the role of government—not to erode the privacy of any entity that contracts with government to further the public interest." *Id.* at 526.

We turn to the evidence presented by the parties on the four factors.

---

[4] It slightly modified the model rules' statement of the second and third factors, articulating them as "(2) the extent to which the government funds the entity's activities [and] (3) the extent of government involvement in the entity's activities." *Fortgang*, 187 Wn.2d at 518.

*Whether the entity performs a government function*

Chris Dugovich, the Union's president, testified by declaration that the Union "represent[s] state-wide county, city and municipal employees in collective bargaining agreements negotiated with those counties, cities and municipalities." CP at 154. He testified that the Union "do[es] not perform a government function" but is, instead, "a private organization that assists its members." *Id.*

The Strands point to the fact that the Union negotiates and enforces CBAs, which, they argue, "define how Spokane County government services are performed by public employees." CP at 30. The Union does on a larger scale something that individual employees can do on their own: negotiate for preferred terms of employment and, if those terms are agreed, enforce them. Individuals and unions can only negotiate, not dictate, terms on which they or their members will be employed. Being across the table from the government in employment negotiations is not a government function.

*The level of government funding*

Mr. Dugovich testified that the Union "do[es] not receive any government funding" and that its "funding sources are private." CP at 154. More specifically, he testified, "We receive no funding from the state, county, city or municipality [sic] in which our member employees work." *Id.*

The Strands argue that "RCW 41.56.110 is [the Union's] authority to be funded by the taxpayers through public employees' salaries." CP at 31. But the statute requires

payroll deduction of union dues only if authorized by the employee. Whether employed by a government agency or a private employer, the salary or wages paid to an employee are *the employee's* property, they are not the property of the public or a private employer. *Cf. Bowles v. Dep't of Ret. Sys.*, 121 Wn.2d 52, 74-75, 847 P.2d 440 (1993) (citing *State ex rel. State Emps.' Ret. Bd. v. Yelle*, 31 Wn.2d 87, 195 P.2d 646, 201 P.2d 172 (1948)) (Contributions to a retirement system made by public employees do not constitute a state or public fund.).

*The extent of government involvement or regulation*

Mr. Dugovich testified that "the government is not involved in our organization nor regulates it. Like everyone, we are subject to state laws but there is no particular government involvement or regulation by which we have some nexus to the government." CP at 154.

With respect to this factor, the Strands argue that the Union "is involved every day and in every way in how public employees in Spokane County function." CP at 32. What the factor asks, however, is whether *the government* is involved in *the Union's* day-to-day operations. *Fortgang*, 187 Wn.2d at 531-32. The Strands presented no evidence that the government exercises authority over day-to-day Union operations.

*Whether the entity was created by the government*

Mr. Dugovich testified that the Union "was not created by the government. We are independent of the government and a private entity." CP at 154.

10

The Strands respond that the Union "was created by public employees" and was "formed to promote, defend and enhance the civil service system." CP at 32 (capitalization omitted). They effectively concede this factor, since formation by public employees is not creation by the government.

None of the four factors suggest that the Union or its local is the functional equivalent of a state or local agency. The trial court properly granted the Union's and Local 1553's motion and properly denied the Strands' motion.

II.      ASSIGNMENT OF ERROR 2:  DENIAL OF THE STRANDS' MOTION FOR
         RECONSIDERATION

While the Strands assign error to the trial court's denial of their motion for reconsideration, they do not devote a section of their brief to the issue nor is any argument directed specifically to the issue of reconsideration. We could decline to review the assignment of error on this basis alone. *See* RAP 10.3(a)(6).

CR 59 provides that on the motion of an aggrieved party, the court "may" vacate an interlocutory order and grant reconsideration. We review a trial court's denial of a motion for reconsideration for abuse of discretion, that is, discretion manifestly unreasonable, or exercised on untenable grounds, or for untenable reasons. *River House Dev. Inc. v. Integrus Architecture, P.S.*, 167 Wn. App. 221, 231, 272 P.3d 289 (2012). Here, the trial court denied the Strands' motion because it "fail[ed] to set forth specific grounds as to the basis for reconsideration, puts forth facts irrelevant to the motion and

11

recites the very same arguments which this court previously rejected." CP at 118. The Strands do not challenge this characterization of their motion. A trial court never abuses its discretion by denying a motion for reconsideration that simply repeats the party's earlier arguments and fails to identify specific grounds as the basis for reconsideration.

III.    ASSIGNMENT OF ERROR 3:  AWARD OF REASONABLE ATTORNEY FEES AND COSTS

Finally, the Strands argue the trial court erred when it found their suit to be frivolous and awarded the Union and Local 1553 their reasonable attorney fees and costs.

RCW 4.84.185 authorizes the trial court in a civil action to require the nonprevailing party to pay the prevailing party's reasonable expenses, including attorney fees, if it finds that a claim or defense was frivolous and advanced without reasonable cause. "The lawsuit or defense, in its entirety, must be determined to be frivolous . . . before an award of attorneys' fees may be made." *Biggs v. Vail*, 119 Wn.2d 129, 133, 830 P.2d 350 (1992) (emphasis omitted). "A frivolous action is one that cannot be supported by any rational argument on the law or facts." *Goldmark v. McKenna*, 172 Wn.2d 568, 582, 259 P.3d 1095 (2011). The trial court's decision under RCW 4.84.185 is reviewed for abuse of discretion. *State ex rel. Quick-Ruben v. Verharen*, 136 Wn.2d 888, 903, 969 P.2d 64 (1998). A court abuses its discretion when its decision is manifestly unreasonable or is exercised on untenable grounds or for untenable reasons. *State ex rel. Carroll v. Junker*, 79 Wn.2d 12, 26, 482 P.2d 775 (1971).

In support of their contention that the lawsuit was not frivolous, the Strands point to other PRA cases where they have been successful, and Ms. Strand represents that she has never been told that one of her complaints was baseless. But the Strands' history as litigants is not the concern; the concern is whether the Union and Local 1553 were subjected to the expense and inconvenience of a claim that had no prospect of succeeding.

None of the *Telford* factors suggest that the Union or its local is the functional equivalent of a state or local agency. And the arguments in the Strands' briefing reveal that they had no evidence with which to *even make a case* that a *Telford* factor would weigh in their favor. All they could demonstrate was that they were seeking information to investigate what they believe to be a matter of public concern (whether Assessor's office employees are working on a basis that violates the CBA) and, given the Union's role representing public employees, the Union should have its own copies of any agreements supplementing the CBA. Neither was a basis for burdening a private union with agency obligations under the PRA.

The trial court did not abuse its discretion in awarding the Union and Local 1553 their reasonable attorney fees and costs. The Union and Local 1553 request an award of reasonable attorney fees and costs on appeal under RAP 18.9, which we grant subject to their compliance with RAP 18.1(d).

13

No. 36233-7-III
*Strand v. Council 2, Wash. St. Council of County & City Emps.*

Affirmed.

A majority of the panel has determined this opinion will not be printed in the

Washington Appellate Reports, but it will be filed for public record pursuant to RCW

2.06.040.

Siddoway, J.

WE CONCUR:

Lawrence-Berrey, C.J.

Korsmo, J.