# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

## DIVISION II

| | |
|---|---|
| JEFFERY RANDALL MCKEE,<br><br>                    Appellant,<br><br>        v.<br><br>PARATRANSIT SERVICES,<br><br>                    Respondent. | No.  51920-8-II<br><br><br>ORDER GRANTING MOTION TO<br>PUBLISH OPINION AND<br>PUBLISHING OPINION |

        RESPONDENT filed a motion to publish this court's opinion filed on April 27, 2020.  After

consideration, the court grants respondent's motion.  It is now

        **ORDERED** that the final paragraph in the opinion which reads "A majority of the panel

having determined that this opinion will not be printed in the Washington Appellate Reports, but will

be filed for public record pursuant to RCW 2.06.040, it is so ordered." is deleted.  It is further

        **ORDERED** that the opinion will now be published.

        **FOR THE COURT**

        **PANEL**: Jj. Worswick, Lee, Melnick

_____
                                    JUDGE

# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

## DIVISION  II

| | |
|---|---|
| JEFFERY RANDALL MCKEE, | No.  51920-8-II |
| Appellant, | |
| v. | |
| PARATRANSIT SERVICES, | UNPUBLISHED OPINION |
| Respondent. | |

WORSWICK, J. — Jeffery R. McKee appeals a summary judgment order dismissing his claims under the Public Records Act (PRA), chapter 42.56 RCW, against Paratransit Services, a private corporation.  McKee argues that the trial court erred by granting summary judgment dismissal because Paratransit is subject to the PRA through a provision in its contract with the State of Washington and because Paratransit acts as a functional equivalent of a government agency.

We hold that Paratransit is not subject to the PRA.  Thus, we affirm.

### FACTS

Congress established the Medicaid program under Title XIX of the Social Security Act, 42 U.S.C. §§ 301-1397.  The federal Medicaid program mandates that states "provide for the establishment of a non-emergency medical transportation [NEMT] brokerage program."  42 U.S.C. § 1396a(70).  States may contract, following a competitive bidding process, with a broker to provide NEMT.  42 U.S.C. § 1396a(70)(B)(i).  The State of Washington contracts with brokers, including Paratransit, to fulfill its obligation to provide NEMT services.

Paratransit is a private corporation that brokers NEMT services in several Washington counties. Paratransit's operations are funded through its contracts with the State. Paratransit was founded as an independent corporation and operates under a private board of directors. Paratransit's executive employees manage its day-to-day operations.

Paratransit operates as a broker for NEMT, meaning that when a client contacts Paratransit to set up NEMT, Paratransit arranges for the transportation with a subcontractor, such as a taxi, or provides the client with reimbursements for bus fares or fuel. If a subcontractor is used for the NEMT, that subcontractor submits a bill to Paratransit, then Paratransit submits invoices to the State for the services provided. Paratransit also contracts for administrative costs. Paratransit receives reimbursement of its administrative fees up to a certain limit. These fees are variable based on Paratransit's monthly administrative costs.

The record on appeal includes three contracts between the State and Paratransit for NEMT. For clarity, we refer to the three contracts as the 2015, 2016, and 2018 contracts. The record includes the substantive provisions for the 2015 and 2018 contracts, but not the 2016 contract. The 2015 and 2018 contracts include provisions stating Paratransit is an independent contractor. In the 2015 contract, a provision, section 19, states, "The Contractor [Paratransit] certifies that the Contractor is now, and shall remain, in compliance with Chapter 42.52 RCW, Ethics in Public Service, throughout the term of this Contract." Clerk's Papers (CP) at 43. The 2018 contract includes an identical provision requiring Paratransit's compliance with chapter 42.52 RCW. The 2018 contract also includes attached exhibits that set forth specific guidelines for Paratransit's NEMT brokerage services. For example, one attachment sets forth details

2

regarding a customer service center, and another sets forth the process for verifying that a client's transportation request is eligible for Paratransit's services.

McKee utilized Paratransit services. On July 12, 2016, McKee submitted a request to Paratransit for all "documents, files, notes and/or memorandums in which Jeffery McKee is identifiable and generated between July 12, 2011 and July 12, 2016." CP at 163. Paratransit provided McKee with the records it believed were "client owned," but informed McKee that Paratransit was not subject to the PRA. CP at 307. McKee then filed a complaint in Kitsap County Superior Court alleging that Paratransit violated the PRA. Paratransit filed a motion for summary judgment dismissal, arguing that Paratransit is not subject to the PRA. The trial court granted Paratransit's motion for summary judgment dismissal.

McKee appeals.

## ANALYSIS

### I. CONTRACTUAL OBLIGATION

McKee first argues that Paratransit is contractually obligated to comply with the PRA. To support his argument, McKee cites to section 19 in Paratransit's 2015 contract with the State. This section states:

> **19. Contractor Certification Regarding Ethics.** The Contractor certifies that the Contractor is now, and shall remain, in compliance with Chapter 42.52 RCW, Ethics in Public Service, throughout the term of this Contract.

CP at 43. The 2018 contract includes an identical provision requiring Paratransit's compliance with chapter 42.52 RCW. Notably, RCW 42.52.050(4), states that state officers and employees may not conceal records that the officer or employee knows is subject to disclosure under the

3

No. 51920-8-II

PRA. Thus, McKee argues that the 2015 contract obligates Paratransit to comply with the PRA, in addition to chapter 42.52 RCW. We disagree.

We review a challenge to a summary judgment ruling de novo. *Fortgang v. Woodland Park Zoo*, 187 Wn.2d 509, 518, 387 P.3d 690 (2017). Summary judgment is appropriate where, viewing the evidence in the light most favorable to the nonmoving party, there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. CR 56; *Greenhalgh v. Dep't of Corr.*, 160 Wn. App. 706, 714, 248 P.3d 150 (2011). In reviewing whether summary judgment was proper, we view all facts and reasonable inferences in a light most favorable to the nonmoving party. *Greenhalgh*, 160 Wn. App. at 714. Mere allegations, argumentative assertions, or conclusive statements do not raise issues of material fact sufficient to preclude a grant of summary judgment. *Greenhalgh*, 160 Wn. App. at 714.

We also review issues of statutory interpretation de novo. *Fortgang*, 187 Wn.2d at 518. We first attempt to derive legislative intent from the statute's plain language and ordinary meaning. *Cent. Puget Sound Reg'l Transit Auth. v. WR-SRI 120th N. LLC*, 191 Wn.2d 223, 233-34, 422 P.3d 891 (2018). If the statute's plain language is not ambiguous, our inquiry ends. *HomeStreet, Inc. v. Dep't of Revenue*, 166 Wn.2d 444, 451, 210 P.3d 297 (2009).

RCW 42.52.050(4) states:

No state officer or state employee may intentionally conceal a record if the officer or employee knew the record was required to be released under chapter 42.56 RCW, was under a personal obligation to release the record, and failed to do so. This subsection does not apply where the decision to withhold the record was made in good faith.

4

RCW 42.52.010(19) defines "state officers" as "every person holding a position of public trust in or under an executive, legislative, or judicial office," and also includes "any person exercising or undertaking to exercise the powers or functions of a state officer."

Here, McKee argues that Paratransit's executives are state officials because the 2015 contract allows the executives "to engage in supervisory and policy enforcing work on behalf of the State." Amended Br. of Appellant at 22. McKee does not cite any authority for this position, and his assertion is unsupported by the record. But even if Paratransit executives were considered "state officers," RCW 42.52.050(4) requires state officers to disclose records *only if* the PRA required release of those records. This statute, in and of itself, does not require PRA compliance from a person subject to chapter 42.52 RCW. Accordingly, the 2015 and 2018 contracts' requirement to comply with chapter 42.52 alone does not create a duty to comply with the PRA.

Additionally, as the contracts in the record make clear, the State has the ability to contract with Paratransit to comply with certain statutes that otherwise would not apply to Paratransit. Despite the 2015 and 2018 contracts here requiring chapter 42.52 RCW compliance, they did not expressly require compliance with the PRA. As a result, the contracts do not require Paratransit and its employees to comply with the PRA.

## II. FUNCTIONAL EQUIVALENT OF A GOVERNMENT AGENCY

McKee next argues that the trial court erred because Paratransit is the functional equivalent of a government agency, and thus subject to the PRA. We disagree.

The PRA is a strongly worded mandate for broad disclosure of public records. *Resident Action Council v. Seattle Hous. Auth.*, 177 Wn.2d 417, 431, 327 P.3d 600 (2013). Its purpose is

to increase governmental transparency and accountability by making public records accessible to Washington's citizens. *John Doe A v. Wash. State Patrol*, 185 Wn.2d 363, 371, 374 P.3d 63 (2016). We liberally construe the PRA to promote the public interest. *Soter v. Cowles Publ'g Co.*, 162 Wn.2d 716, 731, 174 P.3d 60 (2007); RCW 42.56.030. We review actions under the PRA de novo. RCW 42.56.550(3).

The PRA mandates that each public agency make records available for inspection and copying, subject to specific exceptions. RCW 42.56.070(1). A private entity becomes subject to the PRA if it is the "functional equivalent" of a government agency. *Fortgang*, 187 Wn.2d at 517-18. A private entity can contract with a government agency such that its services performed under that contract are the functional equivalent of a government agency. *See Cedar Grove Composting, Inc. v. City of Marysville*, 188 Wn. App. 695, 717-21, 354 P.3d 249 (2015).

We employ the four-factor *Telford* test to determine whether a private entity is the functional equivalent of a government agency: (1) whether the entity performs a core government function, (2) the extent to which the government funds the entity's activities, (3) the extent of government involvement in the entity's activities, and (4) whether the entity was created by the government. *Telford v. Thurston County Bd. of Comm'rs*, 95 Wn. App. 149, 162-63, 974 P.2d 886 (1999); *Fortgang*, 187 Wn.2d at 517-18, 524. "[E]ach of these criteria need not be equally satisfied, but rather the criteria on balance should suggest that the entity in question is the functional equivalent of a state or local agency." *Clarke v. Tri-Cities Animal Care & Control Shelter*, 144 Wn. App. 185, 192, 181 P.3d 881 (2008). This test was designed to protect against governments operating secretly, through private entity surrogates. *Fortgang*, 187 Wn.2d at 533.

1.      *Paratransit Does Not Perform a Core Government Function*

McKee argues that Paratransit performs a core governmental function, namely, administering NEMT on behalf of the Washington Healthcare Authority, based on his reading of former 42 C.F.R § 431.10(b) (2012).[1]  We disagree.

The first factor is whether Paratransit performs "core" governmental functions or "functions that could not be delegated to the private sector."  *Fortgang*, 187 Wn.2d at 524.  An entity does not perform a core government function simply because it contracts with the government.  *Shavklik v. Dawson Place*, 11 Wn. App. 2d 250, 260, 452 P.3d 1241 (2019).

42 C.F.R § 431.10 addresses the powers and responsibilities of a single state agency to make administrative or policy decisions regarding Medicaid in that state.  This regulation prevents the state's Medicaid agency from delegating "the authority to supervise the plan or to develop or issue policies, rules, and regulations on program matters."  42 C.F.R § 431.10(e).  However, the state agency may delegate other responsibilities, such as Medicaid eligibility determinations.  42 C.F.R § 431.10(c).

McKee contends that "Paratransit performs a core government function on behalf of the Washington Healthcare Authority, the administration of [NEMT]" and he argues that this function cannot be delegated.  Amended Br. of Appellant at 30.  He equates Paratransit's

---

[1] Former 42 C.F.R § 431.10(b) was amended in 2012 and 2013.  However, the amendments are not germane to McKee's argument.

transportation services with "administering a Federal program." Amended Br. of Appellant at 30. McKee specifically emphasizes former 42 C.F.R § 431.10(e)(3) (2012).[2]

However, the regulation cited by McKee prohibits delegation of Washington Healthcare Authority's discretionary authority to create policies, rules, and regulations. Former 42 C.F.R § 431.10(e). None of these tasks were delegated to Paratransit. Moreover, Paratransit's brokerage services are not equivalent to the powers addressed in former 42 C.F.R § 431.10(e). Nothing in Paratransit's contract with the State provides for such a delegation, and McKee does not identify any of Paratransit's actions purporting to exercise such high-level authority. McKee fails to show how Paratransit's services perform a core governmental function. Rather, Paratransit merely contracts with the State to broker NEMT services. We hold that the first *Telford* factor weighs against considering Paratransit as a functional equivalent of a government agency.

2.      *Paratransit Is Funded by the State Through a Fee-For-Service Model*

McKee argues that because Paratransit is "entirely funded by the government," the second *Telford* factor weighs in favor of Paratransit being a functional equivalent of a government agency. Amended Br. of Appellant at 31. We disagree.

The second factor is the extent and method by which the government funds Paratransit. *Fortgang*, 187 Wn.2d at 527. Courts consider what percentage of the entity's funding is from

---

[2] Former 42 C.F.R § 431.10(e)(3) (2012) provides:

> If other State or local agencies or offices . . . perform services for the Medicaid agency, they must not have the authority to change or disapprove any administrative decision of [that agency], or otherwise substitute their judgment for that of the Medicaid agency with respect to the application of policies, rules and regulations issued by the Medicaid agency.

the government and the type of funding it receives. *Fortgang*, 187 Wn.2d at 529-30. An entity is less likely to be the functional equivalent of a government agency when it receives less than 50 percent of its funding from the government. *Shavklik*, 11 Wn. App. 2d at 264. However, more significant than the percentage is whether the government provides a fixed funding allocation or uses an ordinary fee-for-services model to provide funding. *Shavklik*, 11 Wn. App. 2d at 264. An ordinary fee-for-services model weighs against functional equivalency. *Shavklik*, 11 Wn. App. 2d at 264.

Here, the funding for Paratransit's services is generated through Paratransit's contract with the State. Paratransit receives funding from the State through two methods. First, the State pays Paratransit at an established rate for each completed NEMT trip that it brokers. In other words, the State pays an amount for the services rendered by Paratransit. This is an ordinary fee-for-service model, which weighs against Paratransit being considered a functional equivalent of a government agency. Second, Paratransit receives reimbursement of its administrative fees up to a certain limit. These fees are variable, based on Paratransit's monthly administrative costs. The administrative costs structure is reimbursement for expenses incurred to operate Paratransit's brokerage services, similar to a fee-for-service model. The administrative costs structure is not a fixed allocation, but may vary depending on Paratransit's actual expenses. McKee alleges that Paratransit's administrative costs "are based on an annual budget and determined at the time the contracts are signed." Amended Br. of Appellant at 32. McKee fails to cite any evidence to support his assertion, and the structure of the administrative costs as set out in the 2018 contract contradict his position. We hold that the fee-for-services and reimbursement for costs models weigh against functional equivalency.

3.      *The Government I not Extensively Involved with Paratransit's Activities*

McKee argues that the State is extensively involved with Paratransit's activities, citing to various sections of 42 C.F.R § 431 and WAC 182-546-5000 through 6200. We disagree.

The third factor is the extent of government involvement in Paratransit's activities. *Fortgang*, 187 Wn.2d at 530. We evaluate the extent of government control by considering the degree of government involvement with "day-to-day operations" as opposed to mere governmental regulation. *Fortgang*, 187 Wn.2d at 530. Whether the entity operates within a more or less heavily regulated area is not the consideration. *Fortgang*, 187 Wn.2d at 531. And a contractual provision stating that the entity is an independent contractor may weigh against functional equivalency. *See Spokane Research & Defense Fund v. W. Cent. Cmty. Dev. Ass'n*, 133 Wn. App. 602, 609, 137 P.3d 120 (2006).

To the extent the regulations cited by McKee control Paratransit, these are mere regulations, not actual organizational control. McKee also points to certain exhibits attached to the 2018 contract, which set out more specific requirements for portions of Paratransit's services, such as a customer service center and the client verification process. [3] Although contractual requirements specify certain standards for Paratransit to follow, they do not show that the government is involved in the day-to-day operations of Paratransit. The record shows that the day-to-day operations are controlled by Paratransit executives. Additionally, the 2015 and 2018

---

[3] There are 11 exhibits attached to the 2018 contract. They are (1) data security requirements, (2) customer service center requirements, (3) client and trip eligibility verification, (4) transportation vehicle standards, (5) driver standards and expectations, (6) transportation performance standards, (7) elements for subcontracts with transportation service providers, (8) requirements for policies and procedures manuals, (9) required reports for NEMT program monitoring, (10) performance incentives and penalties, and (11) a sample HIPAA (Health Insurance Portability and Accountability Act of 1996) consent form.

contracts provided that Paratransit was an independent contractor. We hold that the government is not extensively involved with Paratransit's activities, thus weighing against considering Paratransit as a functional equivalent of a government agency.

4.    *Paratransit Was Not Created by the Government*

McKee concedes the fourth factor, that Paratransit was not created by the government. Amended Br. of Appellant at 39. Paratransit was created by a private corporate board of directors. This factor weighs against Paratransit being considered the functional equivalent of a government agency.

5.    *Balancing the* Telford *Factors, Paratransit Is Not a Functional Equivalent of a Government Agency*

We hold that all four *Telford* factors weigh against considering Paratransit as a functional equivalent of a government agency. Paratransit does not perform a core government function, receives funding primarily through a fee-for-service model, is not subject to day-to-day involvement from the State, and was founded as a private entity. Accordingly, we hold that the trial court did not err when granting Paratransit's motion for summary judgment dismissal.

ATTORNEY FEES

In his conclusion, McKee requests "statutory attorney's fees and costs." Amended Br. of Appellant at 39. We decline to award attorney fees or costs. Presumably, McKee seeks attorney fees and costs under RCW 42.56.550(4), which provides for an award of costs and attorney fees when a party prevails in a PRA action against an agency. McKee does not prevail in this action, thus, he is not entitled to fees.

We affirm.

No. 51920-8-II

A majority of the panel having determined that this opinion will not be printed in the Washington Appellate Reports, but will be filed for public record in accordance with RCW 2.06.040, it is so ordered.

_____
Worswick, J.

We concur:

_____
Lee, C.J.

_____
Melnick, J.